UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x
UPTEMPO SPORTS, LLC, :
                                  :
                    Plaintiff, : **MEMORANDUM &**
                                  : **ORDER GRANTING**
   -against- : **DEFENDANT'S MOTION**
                                  : **FOR SUMMARY**
BENEFIT COATINGS, INC., : **JUDGMENT**
                                  :
                   Defendant. : 3:22-CV-00618 (VDO)
---------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

The plaintiff UpTempo Sports, LLC ("Plaintiff" or "UpTempo") brings this action against Benefit Coatings, Inc. ("Defendant" or "Benefit Coatings"), alleging claims for breach of contract under common law and the Uniform Commercial Code ("UCC"), and for promissory estoppel. (Compl., ECF No. 1.) Defendant seeks summary judgment with respect to all counts, contending that the plaintiff is unable to establish that the parties entered into a signed agreement that satisfies the statute of frauds or that it satisfies the essential elements of a promissory estoppel claim.

For the reasons set forth below, the defendant's motion for summary judgment is **GRANTED**.

**I.    BACKGROUND**

    **A.    Factual Background**

The following facts are taken from Defendant's Local Rule 56(a)1 Statement of Undisputed Material Facts ("Def.'s 56(a)," ECF No. 35-2), Plaintiff's Local Rule 56(a)2 Statement and Counter-Statement of Material Facts ("Pl.'s 56(a)," ECF No. 42-1), and the record. The facts are recounted "in the light most favorable to" Plaintiff, the non-movant.

*Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021). The facts as described below are in dispute only to the extent indicated.[1]

UpTempo is alleged to have invented the HydraPatch, a "transdermal patch featuring electrolytes, nutrients and vitamins for maintaining hydration" in 2019. (Compl ¶ 6.) Benefit Coatings is a contract manufacturer based in Stratford, Connecticut and is experienced in the health and wellness space of coated products. (Def.'s 56(a) ¶ 4.)

In late 2019, UpTempo decided to engage Benefit Coatings to work on the HydraPatch. (*Id*. ¶ 5.) On or about January 21, 2020, Benefit Coatings sent UpTempo a proposal for version 1.0 of the HydraPatch (the "January Proposal"), which set forth multiple steps for the development, manufacturing, and supporting activities of the HydraPatch. (*Id*. ¶ 6; ECF No. 35-6.) UpTempo signed the January Proposal (ECF No. 35-6 at 2), but Benefit Coatings did not. (Pl.'s 56(a) at 4 ¶ 3.) The January Proposal specifies that raw materials would be purchased only after a purchase order was made by UpTempo. (ECF No. 35-6 at 7.) It also required a 50% payment of costs for manufacturing runs of the HydraPatch "with purchase order." (*Id*.

---

[1] Where the parties "identify disputed facts but with semantic objections only or by asserting irrelevant facts . . . which do not actually challenge the factual substance described in the relevant paragraphs, the Court will not consider them as creating disputes of fact." *New Jersey v. N.Y.C. Dep't of Educ.*, No. 18-CV-6173, 2021 WL 965323, at *2 n.1 (S.D.N.Y. Mar. 15, 2021); *see also Scanlon v. Town of Greenwich*, 605 F. Supp. 3d 344, 351 (D. Conn. 2022) (finding that plaintiff's 56(a)2 Statement "improperly interjects arguments and/or immaterial facts in response to facts asserted by Defendant, without specifically controverting those facts"); *Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (deeming admitted Rule 56(a)1 Statements where plaintiff responded with conclusory allegations, speculation, conjecture or legal arguments).

Where possible, the Court has relied on the undisputed facts in the parties' 56(a) submissions. However, direct citations to the record have also been used where relevant facts were not included in any of the parties' statements of material facts, or where the parties did not accurately characterize the record.

at 10.) Furthermore, as the HydraPatch was to be regulated as an over-the-counter ("OTC") drug, Benefit Coatings recommended that UpTempo "contact a regulatory attorney for more information regarding regulatory pathway, labeling and other opinions." (*Id.* at 5.)

Shortly after UpTempo signed the January Proposal, Benefit Coatings expressed its concerns in moving forward on the development of the HydraPatch "without an explicit legal opinion stating a regulatory path to market" (Def.'s 56(a) ¶ 10; ECF No. 35-7 at 3-4), and agreed to work on the HydraPath only after UpTempo agreed to get such an opinion. (ECF No. 35-8.) Thereafter, UpTempo paid Benefit Coatings a 50% deposit for development in the amount of $3,750.00. (Def.'s 56(a) ¶ 10; ECF No. 35-9.)

In early 2020, Benefit Coatings produced multiple samples of version 1.0 of the HydraPatch, some of which were tested by Benefit Coatings' CEO Adam Berry. (Def.'s 56(a) ¶ 11.) On June 9, 2020, Berry emailed UpTempo, indicating that the HydraPatch was a "100% success" and that he did not expect to be able to get the HydraPatch any better than the samples. (ECF No. 35-10 at 5.) He suggested to UpTempo that it was time to move on to stability testing, scaling, and manufacturing of HydraPatch 1.0. (*Id.*) UpTempo disagreed and decided that it wanted to engage in further research and development to produce other versions of the HydraPatch. (Def.'s 56(a) ¶ 13.) UpTempo never submitted a purchase order for HydraPatch 1.0. (*Id.*)

In an attempt to develop alternatives to the HydraPatch 1.0, Benefit Coatings developed the "HydraPatch 1.5," but found that the patch left too much residue on the skin. (*Id.* ¶ 14.) It then explored a version 2.0 of the HydraPatch at UpTempo's request. (*Id.* ¶ 15.)

After discussing pricing and costs via email, on July 1, 2020, Benefit Coatings sent UpTempo a new agreement for the development of HydraPatch 2.0 (the "July Proposal"),

3

which was intended to "nullify" the "original agreement." (*Id.* ¶ 16; ECF No. 35-12.) The cover sheet of the July Proposal stated, "Upon singing of this contract, it is agreed by all parties that the previous contract between UpTempo Sports and Benefit Coatings (HydraPatch Version 1.0, January 21, 2020) is null and void . . ." (ECF No. 35-12 at 3.) It also indicated that manufacturing of the HydraPatch could only happen "once the formula has been found to be shelf stable (or UTS is willing to proceed at risk before stability activities are concluded)." (ECF No. 35-12 at 7.) In addition, the proposal stated that raw materials would be purchased only after a purchase order was "placed by [UpTempo]." (*Id.*)

The July Proposal was never signed or executed. (Pl.'s 56(a) at 5 ¶ 6; Def.'s 56(a) ¶ 19.) UpTempo also never submitted a purchase order for HydraPatch 2.0. (Def.'s 56(a) ¶ 19.) UpTempo continued looking for additional cost information in order to "finalize [an] agreement" into August 2020. (*Id.*; ECF No. 35-13.) Negotiations over pricing for the HydraPatch continued into September, with Berry sending UpTempo an updated pricing chart on September 21, 2020. (Def.'s 56(a) ¶ 19; ECF No. 35-14.)

On October 9, 2020, in response to an email from UpTempo CEO Clifford Rowley, Benefit Coatings stated that the remaining 50% balance for the development of the HydraPatch formula would "come due when the final formula is approved. We will then recommend you send us a purchase order for the number of R&D samples you need (400-1000) at 9$ a piece. 50% of that will be due on receipt of the PO and 50% when we finish all the samples. After that, we will beginning our next state, Scale up, Engineering, and Stability, which is a separate activity from all the rest. A PO will also be needed from you to start this activity[.]" (ECF No. 42-3 at 4.)

4

On October 20, 2020, Berry sent UpTempo a proposed timeline for development of the HydraPatch, which was based on a "place holder" date of November 2 "as the start date for the R&D samples." (ECF No. 35-15 at 6.) When Berry asked for comments on the timeline, Rowley responded, "Depending on when we give you a PO…" (*Id.* at 4.) UpTempo further indicated that it was looking to "bump that timeline" up and discussed "approving [the] formula this week." (*Id.* at 2.) Berry replied, "If timing is an issue, it might be worthwhile to move right into our engineering, scale-up, and stability phase. For this to start, we would need you to approve the formula, and either give us a purchase order for the activities ($20,000 total, 50% due at placement of PO) or give us the verbal approval to send you an invoice for the $10,000 . . . this will start that phase of the project." (*Id.*) UpTempo remitted the $10,000 to commence this phase. (ECF No. 35-19 at 7.)

As of March 2021, UpTempo still had not sent in a purchase order for any version of the HydraPatch. (ECF No. 35-16 at 2; ECF No. 35-17 at 2; ECF No. 35-18 at 2.) Specifically, on March 10, 2021, Crowley sent an email indicating that UpTempo was awaiting stability data to "discuss internally to make a decision on ordering." (Def.'s 56(a) ¶ 21; ECF No. 35-18 at 2.) Berry responded to this email and stated that it was concluding its services for UpTempo because it believed it was being taken "advantage of" by UpTempo. (Def.'s 56(a) ¶ 22; ECF No. 35-19 at 7.) Benefit Coatings offered to transfer the HydraPatch formula and pertinent information to UpTempo and a new manufacturer, which UpTempo agreed to on March 15, 2021. (ECF No. 35-19 at 6-7.)

B.     **Procedural History**

UpTempo filed the instant action on May 3, 2022, bringing claims for breach of contract, promissory estoppel, and violation of UCC Article 2. (Compl.) Benefit Coatings filed

5

its Answer with its affirmative defenses on May 16, 2022. (Answer, ECF No. 9.) Defendant moved for summary judgment as to all claims on July 28, 2023. (Def. Mot., ECF No. 35.) Plaintiff opposes the motion. (Pl. Opp., ECF No. 42.) Defendant has filed a reply. (Def. Reply, ECF No. 43.)

## II.   LEGAL STANDARD

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[2] A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Id.* The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). However, if the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof and submits "merely colorable evidence," then summary judgment is appropriate. *Celotex*, 477 U.S. at 322–23; *Anderson* 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). There must be evidence on which the jury reasonably could find for it. *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

### III.   DISCUSSION

Plaintiff asserts claims for breach of contract, violation of UCC Article 2, and promissory estoppel. For the following reasons, Plaintiff's claims are dismissed.

#### A.   Plaintiff's Contract Claims

Plaintiff raises two similar or related theories regarding its contract claims in its Complaint: (1) that Benefit Coatings breached the parties' agreement for manufacturing of the HydraPatch when it unilaterally cancelled the agreement (Compl. ¶¶ 31-33), and (2) that Benefit Coatings violated Article 2 of the UCC by failure to comply with the parties' agreement for the "purchase of a finished, manufactured transdermal patch, a good as defined under Conn. Gen. Stat. §42a-2-105." (*Id.* ¶¶ 39-43.)

As a preliminary matter, the Court agrees with Defendant that Count One, Plaintiff's common law breach of contract claim, is not viable as a matter of law. In addition to what the Court assumes is a claim under Conn. Gen. Stat. § 42a-2-101 *et seq.* (Count Three),

UpTempo's common law breach of contract claim has been codified under Title 42a of Connecticut's General Statutes. *See* CONN. GEN. STAT. § 42a-2-101 *et seq*. Title 42a is Connecticut's adopted version of the Uniform Commercial Code ("UCC") and governs "contract[s] for sale." *Id.* "The UCC preempts common law claims to the extent that its provisions provide a directly applicable body of statutory law. *See Western Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 146 Conn. App. 169, 181–82, 78 A.3d 167 (2013) (noting that Official Comment 2 to § 1-103 of the UCC explains that while principles of common law and equity may supplement provisions of the [UCC], they may not be used to *supplant* its provisions. . . .)." *Crabtree v. Hope's Windows, Inc.*, No. 3:17-CV-01709 (VAB), 2018 WL 2436992, at *6 n.7 (D. Conn. May 30, 2018) (internal citation marks omitted). Here, UpTempo concedes that the UCC governs and applies to the parties' alleged agreement. *See* Compl. ¶¶ 38-43. Accordingly, Count One of Plaintiff's Complaint is dismissed because it is preempted by the UCC.

As for Plaintiff's UCC claim, the Court finds that it must be dismissed because there is no evidence of the existence of an enforceable contract that satisfies the statute of frauds. Any contract for sale of goods over $500 must be in writing to be enforceable. CONN. GEN. STAT. § 42a-2-201(1) ("Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . .").

First, neither the January nor the July Proposal specifies any certain quantity of goods to be sold. While both proposals provide pricing for various quantities of the HydraPatch that could be ordered, they set forth pricing terms for units that specifically call for a purchase order

8

to be placed by UpTempo. (Def.'s 56(a) ¶¶ 8, 18; ECF No. 35-6 at 10; ECF No. 35-12 at 10.) There is no dispute that, despite the requirement for a purchase order, no purchase order was ever placed. *See* Axel D'Addario Dep. ("UpTempo Dep."), ECF No. 35-5, at 25:22-25 ("Q: Do you understand that it was UpTempo Sports' responsibility to send a purchase order to Benefit Coatings, not the other way around? A: Yes."); *id.* at 26:1-16 ("Q: In your experience, purchase orders come from the buyer, not from the seller, correct? A: Yes. [. . .] Q: Did UpTempo Sports ever send a purchase order to Benefit Coatings?" [. . .] A: No, because we never had the opportunity to."); *id.* at 37:18-22 ("Q: Did UpTempo Sports understand that no manufacturing of the HydraPatch 2.0 could occur until a purchase order was sent by UpTempo Sports to Benefit Coatings? A: Yes."). Furthermore, there is no other writing containing a binding quantity term that could suggest that Benefit Coatings was responsible for manufacturing a certain number of units of the HydraPatch, or which version of the HydraPatch to manufacture. In fact, the closest to a quantity term in the record is when UpTempo suggested in October 2020 that it would "most likely" give Benefit Coatings a purchase order for "125K units." (ECF No. 35-15 at 4.) Let alone the fact that it was UpTempo's obligation to submit a purchase order, the Court finds that this email and stated quantity is not clear or definite enough to bind Benefit Coatings into an agreement. *See, e.g.*, *Omega Eng'g., Inc. v. Eastman Kodak Co.*, 908 F. Supp. 1084, 1091-92 (D. Conn. 1995) (granting summary judgment where alleged requirements contract to supply batteries did not satisfy the statute of frauds because there was no writing containing clear quantity terms that might bind defendant).

Second, and perhaps more importantly, the statute of frauds is not satisfied because the parties have not produced a writing "**signed by the party against whom enforcement is**

9

*sought*," that is, Benefit Coatings. UpTempo concedes that neither the January nor July Proposal was signed by Benefit Coatings. *See* Pl.'s 56(a) at 4 ¶ 3 ("Benefit Coatings never signed [the January Proposal]."); *id.* at 5 ¶ 6 ("Th[e July] proposal was never fully executed."). Moreover, no purchase order that could bear Benefit Coating's "signature" exists here and the parties explicitly contemplated for the submission of such purchase order prior to manufacturing of the HydraPatch. *See PH Int'l Trading Corp. v. Nordstrom, Inc.*, 555 F. App'x 9, 11 (2d Cir. 2013) (holding that purchase order "summary report" did not satisfy statute of frauds and "even if such a sheet could satisfy the signature requirement, [defendant's] stated policy, of which [plaintiff] had notice, explicitly disclaimed intent to enter into a binding contract on the basis of the Summary Report"); *cf. Chugach McKinley, Inc. v. Patriot Valve & Fitting Corp.*, No. 12-CV-1216 (ENV) (LB), 2013 WL 12109376, at *2 (E.D.N.Y. Mar. 20, 2013) (holding that New York statute of frauds was satisfied because both a purchase order and invoice were present in the case).

Accordingly, the Court enters summary judgment on Plaintiff's UCC claim.

### B. Plaintiff's Promissory Estoppel Claim

A claim for promissory estoppel requires "'[1] a clear and unambiguous promise; [2] a reasonable and foreseeable reliance by the party to whom the promise is made; and [3] an injury sustained by . . . reason of his reliance.'" *Dacourt Group, Inc. v. Babcock Indus., Inc.*, 747 F. Supp. 157, 161 (D. Conn. 1990) (quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 78 (2d Cir. 1984)). Plaintiff's promissory estoppel claim alleges that "[o]n numerous occasions, Benefit Coatings' CEO, Adam Berry stated that a purchase order would be in and ready by April, 2021." (Compl. ¶ 36.)

The Court agrees with Benefit Coatings that Berry's representation does not constitute a "clear and unambiguous promise" sufficient to support a claim for promissory estoppel. This representation was made in the course of negotiations regarding the timeline for development of the HydraPatch and, as previously discussed, on the condition or premise that UpTempo submit a purchase order. *See* ECF No. 35-15 at 3 (indicating as of October 21, 2020 that the "***estimated***" ship date for the first lot of HydraPatch units if a 125,000 unit purchase order was submitted would be April 20, 2021) (emphasis added). Therefore, Berry's representation is too vague to satisfy the requirement of a "clear and unambiguous promise" on the part of the promisee. *R.G. Group*, 751 F.2d at 78; *D'Ulisse–Cupo v. Board of Directors*, 520 A.2d 217, 221 (Conn. 1987). At the time this alleged promise was made, material terms remained unresolved. Given the context in which the representation was made, the Court concludes that no "clear and unambiguous" promise was made by Benefit Coatings and thus, it is entitled to summary judgment on Count Two of the Complaint. *See Dacourt Group, Inc.*, 747 F. Supp. at 161 (granting defendant's summary judgment motion as to promissory estoppel claims).

## IV.     CONCLUSION

For the foregoing reasons, Benefit Coatings' Motion for Summary Judgment (ECF No. 35) is **GRANTED**.[3] Judgment is entered in the defendant's favor. As there are no remaining claims, the Clerk is directed to close this case.

---

[3] The Court declines to address the parties' jurisdictional and waiver arguments as it has decided Defendant's motion for summary judgment on other grounds.

**SO ORDERED.**

Hartford, Connecticut
April 23, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge